# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

GERTRUDE H. ALLEN, *an individual;*　　　\*
and MARIANNE E. ALLEN, LAURIE
L. ALLEN, and RONALD WM. COLE,　　　\*
*as Trustees of 1988 Trust for Allen Children*　　　Civil Action No. RDB-20-175
*on behalf of themselves and all others*　　　\*
*similarly situated,*
　　　\*
　　Plaintiffs,
　　　\*
　v.
　　　\*
LEGAL & GENERAL AMERICA, INC.;
BANNER LIFE INSURANCE CO.;　　　\*
FIRST AMERICAN INSURANCE
UNDERWRITERS, INC.; and　　　\*
JONATHAN GOLDSTEIN,
　　　\*
　　Defendants.
\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM OPINION

The basic allegation in this litigation is that the Defendants Legal & General America, Inc. ("Legal & General"), Banner Life Insurance Company ("Banner"), First American Insurance Underwriters, Inc. ("First American"), and Jonathan Goldstein (collectively, "FAC Defendants") conspired and schemed to market and sell "a sham" life insurance product, purporting to offer a flexible premium universal life policy that would provide a lifetime death benefit at an affordable cost when, in reality, it was merely a dressed-up term policy with no such benefit. (ECF No. 148.)[1]

---

[1] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Order cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

This case—originally filed in the United States District Court for the Northern District of California—follows an earlier-filed and now-settled class action lawsuit against Defendant Banner. *Dickman v. Banner Life Insurance Co.* (RDB-16-192). *Dickman* was consolidated with another class action against William Penn Life Insurance Co., *Rich v. William Penn Life Insurance Co.* (GLR-17-2026), after settlement agreements were reached in both matters. *See* Order, *Dickman*, No. RDB-16-192 (D. Md. July 31, 2019), ECF No. 245. The life insurance policy at issue in *Dickman* was the same purchased by the Allen Trust in this case. Notably, the Allen Trust did not opt out of the *Dickman* settlement, despite objecting to the settlement agreement and ultimately appealing to the United States Court of Appeals for the Fourth Circuit. That appeal was rejected. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 517–18 (4th Cir. 2022). The gravamen of the allegations in this case regurgitate the allegations in the previously settled class action.

Through the operative ten-count Supplemented First Amended Class Action Complaint ("Supplemented FAC") (ECF No. 148), Plaintiffs Gertrude H. Allen, an individual, and Marianne E. Allen, Laurie L. Allen, and Ronald William Cole, as Trustees of 1988 Trust for Allen Children (collectively, "FAC Plaintiffs") allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Counts I and II), as well as claims for breach of fiduciary duty (Count III), negligent misrepresentation (Count IV), disgorgement (Count V), breach of contract and breach of duty of good faith and fair dealing (in the alternative) (Count VI), fraud (Count VII), aiding and abetting (Count VIII), civil conspiracy (Count IX), and unfair practices under California Business and Professions Code § 17204 (Count X) against all FAC Defendants.

Presently pending are the FAC Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint (ECF Nos. 114 (Defendant Goldstein's Motion to Dismiss); 115 (Defendants Banner and Legal & General's Motion to Dismiss); 116 (Defendant First American's Motion to Dismiss) (collectively, the "Motions to Dismiss")).  Shortly after the Motions to Dismiss were filed, FAC Plaintiffs filed the also pending Motion for Leave to File Second Amended Class Action Complaint ("Motion for Leave") (ECF No. 123).  Therein, Plaintiffs propose adding Plaintiff Leo Albert Demm and Defendant AXA Advisors, LLC n/k/a Equitable Advisors ("AXA"), as well as a claim under New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. § 56:8-1 *et seq.* against Defendant AXA.  Plaintiffs further propose dropping individual Plaintiff Gertrude Allen, Defendant Legal & General, as well as its claims alleging RICO violations.  Lastly, Plaintiffs propose amending their claim for breach of contract and breach of duty of good faith and fair dealing (in the alternative) such that it is only asserted against Banner and their claim for aiding and abetting such that it is only asserted against First American, Goldstein, and AXA.  (*See* ECF No. 123-1.)  The FAC Defendants responded in opposition, (ECF Nos. 126 (Defendant Goldstein's Opposition), 127 (Defendants Banner and Legal & General's Opposition), 128 (Defendant First American's Opposition)), and Plaintiffs replied (ECF No. 131).

After the Motion for Leave was fully briefed, Plaintiffs filed a Motion for Leave to File Supplemented First Amended Class Action Complaint (ECF No. 132), as well as a Notice of Supplemental Facts Relevant to Motion for Leave to File Second Amended Class Action Complaint (the "Notice") (ECF No. 133).  With respect to the latter, the FAC Defendants oppose Plaintiffs' Notice (ECF Nos. 137 (Defendants Banner and Legal & General's

Opposition), 140 (Defendant First American's Opposition), 142 (Defendant Goldstein's Opposition)).

On July 9, 2024, the Court held an off-the-record telephone conference with counsel of record discussing the various filings. (ECF No. 147.) As detailed in the Letter Order memorializing the conference, the Court granted Plaintiffs' Motion for Leave to File Supplemented First Amended Class Action Complaint (ECF No. 132), and instructed the parties to follow a briefing schedule with respect to the pending Motions to Dismiss (ECF Nos. 114, 115, 116). And so, on July 23, 2024, the FAC Defendants filed their Supplemental Memorandum of Defendants in Support of Motions to Dismiss Plaintiffs' First Amended Class Action Complaint as now Supplemented (the "Supplemental Memorandum") (ECF No. 149), which is also pending. On August 13, 2024, Plaintiffs responded in opposition to the Motions to Dismiss and the Supplemental Memorandum (ECF No. 150). Defendants replied on August 27, 2024 (ECF Nos. 151 (Defendant Goldstein's Reply), 152 (Defendant First American's Reply), 153 (Defendants Banner and Legal & General's Reply)).

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, the Defendants' Motions to Dismiss (ECF Nos. 114, 115, 116) and Supplemental Memorandum (ECF No. 149) are GRANTED; and Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) is DENIED. This case shall be DISMISSED WITH PREJUDICE.

## BACKGROUND

### I.    Relevant Factual Background

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in

a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).   The following facts are derived from Plaintiffs' Supplemented First Amended Complaint (ECF No. 148) and accepted as true for the purpose of Defendants' pending motions (ECF Nos. 114, 115, 116, 149).

The FAC Plaintiffs allege that the FAC Defendants represented that Banner's flexible premium universal life policy with "features that would collectively keep the death benefit on the policies in place for the remainder of the Insured's life: (1) a low 20-year Monthly Guarantee Premium (marketed as a "term alternative"); (2) a grace period provision that would keep the policy in force after 20 years with the payment of reasonable and predictable additional premiums (the "Grace Period"); and (3) an Extension of Maturity Date endorsement that would keep the death benefit in force beyond age 100 with no further premiums." (ECF No. 148 ¶ 2.)   FAC Plaintiffs further allege that the FAC Defendants represented that, during the Guarantee Period, policyholders had the option to pay only the minimum guarantee premium or any amount over the minimum, with a policyholder who paid the minimum guarantee premium maintaining an account value of at least zero at the end of each policy year during the Guarantee Period, whereas a policyholder who opted to pay excess premiums would build a positive account value and earn interest on Banner's investment of the excess premium. (*Id.* ¶ 3.)   "In either event, the [FAC Defendants allegedly] represented that during the Guarantee Period, so long as at least the minimum guarantee premium was paid, the Policy would not lapse and the account value would remain at or above $0," unless there were loans taken out against the policy. (*Id.* ¶¶ 3, 5.)

In or about September 2023, Defendant Goldstein, who Plaintiffs allege was acting as the agent of First American, sold the Allen Trust a Banner life insurance policy on the life of Gertrude Allen, who was 76 years old at the time.  (*Id.* ¶ 46.)  According to the FAC Plaintiffs, Goldstein pitched the Banner Policy as an "affordable permanent life insurance product, and the [FAC Plaintiffs] chose to purchase the [policy] specifically because it was presented to them as a universal life policy that, unlike a term policy, would provide an option to extend the insurance coverage beyond the initial 20-year Guarantee Period."  (*Id.* ¶ 47.)  At the time of purchase, the FAC Defendants provided FAC Plaintiffs with a copy of the policy contract, illustration and explanation, and statement of policy cost and benefit information, which provided that the policy required only the payment of the minimum guarantee premium of $24,220 per year during the Guarantee Period.  (*Id.* ¶ 48.)  According to FAC Plaintiffs, "none of the [provided documents] gave any indication whatsoever that the account value could ever go negative (unless there was an outstanding loan on the Policy), or that any negative account values would accrue and be payable should the Individual Plaintiffs want to extend coverage beyond the Guarantee Period."  (*Id.* ¶ 50.)

The operative Complaint provides that "[f]rom September 2003 through September 2022, the [FAC] Plaintiffs . . . paid the guaranteed level premium" with the expectation that it was receiving permanent life insurance.  (*Id.* ¶¶ 51–52.)  The FAC Plaintiffs allege that, throughout that time, they received annual statements from Banner that showed a minimum $0 account value on the policy.  (*Id.* ¶ 53.)

Sometime in 2018, the *Allen* FAC Plaintiffs allege that they began exploring the possibility to sell the Banner policy.  (*Id* ¶ 55.)  As part of these efforts, the FAC Plaintiffs

requested that Banner provide them with an illustration that confirmed the premium schedule used in the valuation of the policy "[t]o assist with the marketability of the policy." (*Id.* ¶ 58.) The FAC Plaintiffs allege that, on August 22, 2018, Banner provided an illustration indicating that the required premium to keep the policy in place for year 21 was $5,876,215.11, though this amount was subsequently revised to $2.4 million. (*Id.* ¶¶ 59, 67, at 20 n.8.)

A few years later, on September 13, 2023, the Allen Trust received correspondence from Banner "indicating that its Policy would terminate if it did not pay a single-year premium for the first year after the expiration of the Guarantee Period (year 21) of $2,091,405.29." (*Id.* ¶ 69.) The Allen Trust contends that the policy lapsed "[w]hen the Allen Trust was unable to pay this unconscionable premium." (*Id.*)

According to the operative Complaint, the FAC Plaintiffs have paid the minimum guarantee premium since the Policy's issuance in September 2003, with the "total premiums paid to date equal[ing] $484,000." (*Id.* ¶ 70.) The FAC Plaintiffs emphasize that the Allen Trust does not have what it was promised by the FAC Defendants—a permanent life insurance policy that they can maintain until death or realize the value of with a life settlement. (*Id.*) Through the Supplemented FAC, the FAC Plaintiffs seek to redress this injury suffered by the Allens and other putative class members, advancing the following claims against the FAC Defendants: claims for RICO violations (Counts I and II), (*id.* ¶¶ 140–59), as well as claims for breach of fiduciary duty (Count III), (*id.* ¶¶ 160–64), negligent misrepresentation (Count IV), (*id.* ¶¶ 165–71), disgorgement (Count V), (*id.* ¶¶ 172–74), breach of contract and breach of duty of good faith and fair dealing (in the alternative) (Count VI), (*id.* ¶¶ 175–82), fraud (Count VII), ((*id.* ¶¶ 183–88), aiding and abetting (Count VIII), (*id.* ¶¶ 189–92), civil

conspiracy (Count IX), (*id.* ¶¶ 193–99), and unfair practices under California Business and Professions Code § 17204 (Count X), (*id.* ¶¶ 200–203).[2]

## II.    *Dickman v. Banner Life Insurance Co.* (RDB-16-192)

To understand the instant case, it is necessary to also understand the history of *Dickman v. Banner Life Insurance Co.* (RDB-16-192).[3]  *Dickman* was filed in January 2016 by a proposed class of life insurance policyholders for Banner's alleged misrepresentations of the performance of their universal life policies and fraudulent increases to cost-of-insurance ("COI") charges to a class of policyholders. Complaint, *Dickman*, No. RDB-16-192 (D. Md. Jan. 19, 2016), ECF No. 1.  As noted, the policies at issue in *Dickman* were the same kind of life insurance policy purchased by the Allen Trust.  The *Dickman* class representatives alleged that they paid "an excess premium . . . to accrue a higher cash value" in their account.  *Id.* at 6–7.  The *Dickman* plaintiffs alleged that "Banner [was] cash strapped" because its parent company had been squeezing dividends out of the insurer for years.  *Id.* at 50.  Faced with these liquidity problems, the *Dickman* plaintiffs claimed that "Banner has decided to take that cash from policyholders through a fraudulent COI increase."  *Id.*  Specifically, the *Dickman* plaintiffs asserted that Banner "dramatically" increased their COI charges to prompt policyholders to move more money into their accounts, then "raid[ed the policyholders'] policies' cash values and attempt[ed] to force them to surrender their policies."  *Id.* at 8.

---

[2]  Plaintiffs "consent" to the dismissal of Plaintiff Gertrude Allen and Defendant Legal & General, and also consent to the dismissal of their RICO claims (Counts I and II of the Supplemented FAC) and the claim brought pursuant to the California Business and Professions Code (Count X of the Supplemented FAC).  (ECF No. 150 at 7 n.3.)

[3]  As noted *supra*, *Dickman* was consolidated with another class action against William Penn Life Insurance Co., *Rich v. William Penn Life Insurance Co.* (GLR-17-2026), after settlement agreements were reached in both matters.  *See* Order, *Dickman*, No. RDB-16-192 (D. Md. July 31, 2019), ECF No. 245.

On June 28, 2019, the parties in *Dickman* reported to the Undersigned Judge that they had settled in-principle the class action filed in 2016 against Banner and its corporate parents. Joint Status Report, *Dickman*, No. RDB-16-192 (D. Md. June 28, 2019), ECF No. 241. As detailed *infra*, two months after the parties in *Dickman* notified this Court of their settlement in-principle, the *Allen* FAC Plaintiffs initiated the instant action against the FAC Defendants in the United States District Court for the Northern District of California. (ECF No. 1.) The settlement terms in *Dickman* were finalized and publicly disclosed on October 3, 2019. Motion for Settlement, No. RDB-16-192 (D. Md. Oct. 3, 2019), ECF No. 250. The Settlement Agreement required Banner to refund to class members a portion of the money they had paid, with a minimum of $100 per class member, and provided some nonmonetary benefits, with a total value of roughly $40 million.[4] *Id.* It further released Banner and its intermediate and ultimate parents and "general agents, agents and producers" from liability for:

> any and all claims, . . . arising out of or relating to the implemented or not implemented COI Rate Increases or any claims or causes of action that were or could have been alleged in the Consolidated Actions Complaints based on the same factual predicate, including but not limited to (a) the decision to implement or not implement the COI Rate Increases, (b) the design, development, implementation and administration of the COI rates in the Class Policies; (c) any alleged false, misleading, and/or fraudulent statements or omissions made in Policy Statements, Policy communications, marketing materials, Corporate Reports, and websites relating to the Class Policies' COI charges, account value, and/or Banner's . . . financial condition; (d) the use of affiliated reinsurance transactions, special purpose financial captives and payment of extraordinary dividends as alleged in the *Dickman* . . . complaint[]; and (e) any payments made in the past or future as a result of the implemented COI Rate Increases.

*Id.*

---

[4] The settlement negotiated in *Dickman* benefited in-force policyholders by reducing negative account values (such as the Allen Trust) and increasing positive account values.

Following a hearing, this Court preliminary approved the settlement terms in *Dickman* on October 17, 2019.  Preliminary Approval Order, No. RDB-16-192 (D. Md. Oct. 17, 2019), ECF No. 256.  On December 23, 2019, the *Allen* FAC Plaintiffs lodged the only objection to the settlement in *Dickman*[5] and sought expedited discovery in the settlement proceedings. Objector's Motion to Serve Discovery and Request for Expedited Responses, No. RDB-16-192 (D. Md. Dec. 23, 2019), ECF No. 265.  After such discovery was permitted and conducted, along with further supplemental briefing and a second fairness hearing, this Court overruled the *Allen* FAC Plaintiffs' objections as "without merit" and ruled that the settlement fairly and adequately compensated all class members.  Final Approval Order, No. RDB-16-192 (D. Md. May 20, 2020), ECF No. 361.

The Allen Trust appealed to the United States Court of Appeals for the Fourth Circuit, arguing that this Court abused its discretion in rejecting their arguments that their so-called "Deficit Account Harm" (DAH) was not disclosed to FAC Plaintiffs or was distinct from the harm they allegedly sustained as a result of the COI rate increases that were at issue in *Dickman*. On March 15, 2022, the Fourth Circuit rejected the *Allen* FAC Plaintiffs' arguments.  *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 517–18 (4th Cir. 2022). Relevant to the issue presently before this Court, the Fourth Circuit described the distinction between the Allen Trust's theory and that of the *Dickman* plaintiffs as "temporal."  *Id.* at 523. The court explained:

> The [Allen] Trust vigorously argues that its asserted "deficit account harm" is totally different from the "negative account value" that the *Dickman* parties considered in negotiating the settlement agreement.  But upon closer

---

[5] While less than one percent of the *Dickman* class opted out (that is, 89 policy holders), the Allen Trust did not opt of the class.

examination, the Allen Trust's and *Dickman* plaintiffs' claims are two sides of the same coin. The difference, such as it is, turns on when the plaintiffs would have to pay the allegedly unlawful charges. The *Dickman* plaintiffs had been paying them on a rolling basis, going above and beyond the guaranteed minimum payment during the first twenty years. The Allen Trust may have to pay these charges all at once, in year 21. But the COI charges themselves are the same.

*Id.* Of import, the Fourth Circuit further noted in a footnote:

> To the extent that the Allen Trust argues that the *Dickman* parties never proved that the so-called "deficit account" consisted *only* of COI charges, we note that the magistrate judge who oversaw discovery gave the Allen Trust the opportunity to ask for such proof by rewording an interrogatory. The Allen Trust, apparently, did not do so. Moreover, the crucial evidence before the district court was the testimony of the Allen Trust's own expert [William Mountain] that the year-21 balloon payment was "consistent with the amount of unpaid COI charges" at issue in *Dickman* and Banner's above-quoted response to the Allen Trust's (unreworded) interrogatory.

*Id.* at 522 n.4.

## III.   Procedural History of the Instant Case

As noted *supra*, the instant case was originally filed by FAC Plaintiffs against the FAC Defendants in the United States District Court for the Northern District of California on August 13, 2019. (ECF No. 1.) Defendants Banner and Legal & General moved to transfer the instant suit to this Court, arguing that the Northern District of California was not as well positioned to consider the argument that the *Dickman* settlement agreement precluded the Allen Trust's claims. (ECF No. 37.) The Northern District of California granted that motion, and this case was removed to this Court on January 22, 2020. (ECF No. 57.)

On June 2, 2020, this Court issued a Letter Order (ECF No. 88) staying the case pending the appeal of a class action settlement approved in *Dickman*. As noted, the Fourth Circuit affirmed this Court's judgment on March 15, 2022. 28 F.4th at 517–18. The parties

notified the Court of the Fourth Circuit's holding on April 7, 2022, (ECF No. 108), but indicated that FAC Plaintiffs were "currently considering whether to file a petition for writ of certiorari to the Supreme Court" and both parties "request[ed] that the Court keep the current stay in place until either June 13, 2022, or in the event Plaintiffs file a petition, until a decision is issued on such petition." (*Id.*) On June 13, 2022, the parties submitted a joint status report indicating that the FAC Plaintiffs were not filing a petition for writ of certiorari and "request[ed] that the Court [] lift the stay in this proceeding." (ECF No. 109.) On June 14, 2022, this Court ordered that the stay of discovery be lifted. (ECF No. 110.)

In the same Order, the Court instructed Plaintiffs to file a First Amended Class Action Complaint by August 8, 2022. (*Id.*) On August 8, 2022, Plaintiffs filed the First Amended Complaint, (ECF No. 112), which was supplemented on July 10, 2024 to form the operative Complaint in this case (ECF No. 148).

### A. Defendants Move for Dismissal.

On September 26, 2022, the Defendants filed three Motions to Dismiss pursuant to Federal Rule of Civil Procedures 12(b)(1) and 12(b)(6) (ECF Nos. 114 (filed by Defendant Goldstein), 115 (filed by Defendants Banner and Legal & General), 116 (filed by First American)). Defendants advance numerous grounds for dismissal of the Plaintiffs' First Amended Complaint (ECF No. 112), including standing and the release in the *Dickman*. (ECF Nos. 114, 115, 116.)

### B. Rather Than Respond to the Motions to Dismiss, Plaintiffs Filed a Motion for Leave to File Second Amended Class Action Complaint.

On or about October 25, 2022, Plaintiffs' counsel spoke to Leo Demm, a resident of New Jersey, who, like the Allen Trust, is a member of the *Dickman* class and had been referred

to them by *Dickman* class counsel.  (ECF No. 123-1 at 21.)  Plaintiffs claim that "Demm was a victim of the same fraudulent scheme alleged in *Allen*."  (*Id.* at 21–22.)

According to Plaintiffs, in September 2002, a now-deceased agent from AXA sold Demm a policy that was to provide a $100,000 death benefit.  (ECF No. 123-2 ¶ 69.) According to Demm, AXA represented that the policy was an affordable permanent life insurance product, and he chose to purchase the policy because it was a universal life policy, as opposed to a term policy.  (*Id.* ¶¶ 70, 73.)  According to the policy contract provided to Demm, the Guarantee Period during which the minimum premium would remain level ($1,568.76 per year) was 20 years.  (*Id.* ¶ 71.)  After the Guarantee Period expired, Demm "would need to pay additional reasonable and predictable premiums . . . through the Grace Period in order to keep the policy in place until he reached age 100," at which time "the death benefit would be in place for the remainder of [his] life with no additional premiums being due."  (*Id.*)

According to Demm, from September 2002 through August 2022, he paid the guaranteed level premium of $1,568.76 per year to keep the policy in place, for a total amount of $31,375.20.  (*Id.* ¶ 74.)  Throughout the Guarantee Period, Demm received annual statements from Banner showing "the current status of [the policy] including the current account value," and at no time did these statements indicate that the account value was negative or that there was a deficit accruing on the account.  (*Id.* ¶ 75.)  And then, on September 20, 2022, Demm received a letter indicating that the premium he would have to pay to extend the policy for the first year beyond the Guarantee Period was $92,215.38.  (*Id.* ¶ 78.)

And so, Plaintiffs filed the pending Motion for Leave to File Second Amended Class Action Complaint ("SAC") (ECF No. 123).   Therein, Plaintiffs propose adding Plaintiff Demm (ECF No. 123-2 ¶ 18) and Defendant AXA (*id* ¶ 22), as well as an additional claim under N.J. Stat. § 56:8-1 *et seq.* (*id.* ¶¶ 160–66).   They further propose dropping individual Plaintiff Gertrude Allen, Defendant Legal & General, as well as its claims alleging RICO violations (*see* ECF No. 123-3).   Lastly, the Plaintiffs propose amending their claim for breach of contract and breach of duty of good faith and fair dealing (in the alternative) such that it is only asserted against Banner (ECF No. 123-2 ¶¶ 131–38) and their claim for aiding and abetting such that it is only asserted against First American, Goldstein, and AXA[6] (ECF No. 123-1 at 24–25).   FAC Defendants filed oppositions to the Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint on January 27, 2023 (ECF Nos. 126 (filed by Goldstein), 127 (filed by Banner and Legal & General), 128 (filed by First American)). Plaintiffs replied on March 13, 2023. (ECF No. 131.)

### C. Subsequently, Plaintiffs Filed a Motion for Leave to File Supplemented First Amended Class Action Complaint as well as a Notice of Supplemental Facts Relevant to Motion for Leave to File Second Amended Class Action Complaint.

On September 13, 2023, the Allen Trust received correspondence from Banner "demanding a single-year premium for year 21 of $2,091,405.29 . . . to keep the policy in place." (ECF No. 132-1 at 3 (citing ECF No. 132-1); *see also* ECF No. 133 at 3–4 (citing ECF No. 133-1).)   And so, on December 13, 2023, while various motions remained pending, FAC Plaintiffs filed two additional documents.  (ECF Nos. 132, 133.)   First, Plaintiffs filed a Motion

---

[6]  The proposed Second Amended Complaint contradicts Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint, as the aiding and abetting count remains asserted against all SAC Defendants. (*Compare* ECF No. 123-1 at 24 – 25 *with* ECF No. 123-2 ¶¶ 145–48.)

for Leave to File Supplemented First Amended Class Action Complaint (ECF No. 132), which Plaintiffs contend was filed to conform the operative pleading to these newly occurring facts. (ECF No. 132-1 at 4.)  Second, Plaintiffs filed a "Notice of Supplemental Facts Relevant to Motion for Leave to File Second Amended Class Action Complaint" (ECF No. 133). Plaintiffs contend that the Notice was filed to establish that (1) FAC Defendants' standing arguments are moot and (2) the Allen Trust's damage claim was never speculative. (*Id.* at 2–4.)

Shortly thereafter, counsel for FAC Defendants reached out to chambers to inquire about requesting a status conference.  On December 20, 2023, this Court docketed a Marginal Order (ECF No. 135) approving the parties' Consent Motion for Extension of Time to Respond to Filings (ECF No. 134).  That Order provided that FAC Defendants' obligations to respond to ECF Nos. 132 and 133 would be suspended until the Court ruled on the Parties' request for a status conference.  (ECF No. 135.)

On July 1, 2024, the FAC Defendants filed responses in opposition to Plaintiffs' Motion for Leave to File Supplemented First Amended Class Action Complaint (ECF No. 132), (*see* ECF Nos. 136 (filed by Defendants Banner and Legal & General), 139 (filed by Defendant First American), 141 (filed by Defendant Goldstein)), as well as to Plaintiffs' Notice of Supplemental Facts Relevant to Motion for Leave to File Second Amended Class Action Complaint (ECF No. 133), (*see* ECF Nos. 137 (filed by Defendants Banner and Legal & General), 140 (filed by Defendant First American), 142 (filed by Defendant Goldstein)).

### D. Following a Telephone Conference With the Parties, the Court Ordered Further Briefing on the Pending Motions to Dismiss.

On July 9, 2024, the Court held an off-the-record telephone conference with counsel

of record.  That same day, this Court entered an order instructing the Clerk of Court to lift

the stay in this case, granting Plaintiffs' Motion for Leave to File Supplemented First Amended

Class Action Complaint (ECF No. 132); instructing Plaintiffs to refile a clean copy of the

Supplemented First Amended Class Action Complaint; and ordering the parties to follow a

briefing schedule with respect to the pending Motions to Dismiss.  (ECF No. 147.)  On

July 10, 2024, Plaintiffs filed the Supplemented First Amended Class Action Complaint (ECF

No. 148).  On July 23, 2024, the FAC Defendants filed their Supplemental Memorandum of

Defendants in Support of Motions to Dismiss Plaintiffs' First Amended Class Action

Complaint as now Supplemented (ECF No. 149).  On August 13, 2024, Plaintiffs responded

in opposition to the Motions to Dismiss and the Supplemental Memorandum (ECF No. 150).

The pending motions (ECF Nos. 114, 115, 116, 123, 149) are ripe for review.

## STANDARD OF REVIEW

### I.      Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for

lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by

a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to

jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the

allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual

challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns*

*v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219

(4th Cir. 1982)).  In determining whether jurisdiction exists, the district court "is to regard the

pleading' allegations as mere evidence on the issue, and may consider evidence outside the

pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## II.   Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

### III.    Motion to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides the general framework for amending pleadings. Specifically, Rule 15(a) provides that, after a response pleading is served, a plaintiff may amend his complaint "by leave of court or by written consent of the adverse party." In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lance v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002). Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

## ANALYSIS

The Court addresses the FAC Defendants' Motions to Dismiss (ECF Nos. 114, 115, 116), as supplemented by the Supplemental Memorandum (ECF No. 149), before turning to Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123).

### I.    Defendants' Motions to Dismiss (ECF Nos. 114, 115, 116) and Supplemental Memorandum (ECF No. 149)

Preliminarily, the Court notes that Plaintiffs "consent to the removal of [Gertrude] Allen as a plaintiff, the dismissal of [Legal & General] as a defendant, and dismissal of all of

the RICO claims (Counts I and II [of the Supplemented FAC]," as well as "the claim brought pursuant to the California Business and Professions Code (Count X [of the Supplemented FAC])." (ECF No. 150 at 7 n.3.)   Accordingly, the Court will proceed in analyzing the remaining claims as alleged by Marianne E. Allen, Laurie L. Allen, and Ronald Wm. Cole as Trustees of 1988 Trust for Allen Children against remaining Defendants Banner, First American, and Goldstein in the Supplemented FAC (ECF No. 148): breach of fiduciary duty (Count III), negligent misrepresentation (Count IV), disgorgement (Count V), breach of contract and breach of duty of good faith and fair dealing (in the alternative) (Count VI), fraud (Count VII), aiding and abetting (Count VIII), and civil conspiracy (Count IX).

The crux of Defendants' Motions to Dismiss and Supplemental Memorandum (ECF Nos. 114, 115, 116, 149) is that Plaintiffs lack sufficient harm to confer standing; that Plaintiffs' claims are barred by the settled class action in *Dickman*; that Plaintiffs have failed to allege claims for breach of fiduciary duty, negligent misrepresentation, disgorgement, breach of contract, fraud, aiding and abetting, and civil conspiracy, and any of these claims sufficiently alleged would be time barred; that Plaintiffs have failed to plead with specificity claims subject to Federal Rule of Civil Procedure 9(b): negligent misrepresentation, fraud, aiding and abetting, and civil conspiracy; and that the economic loss doctrine bars all remaining claims. The Court will first address Defendants' argument on standing before turning to the preclusive effect of the release contained in the *Dickman* Settlement Agreement.

## A.  Standing

As a threshold matter, the Court must first consider whether the FAC Plaintiffs have standing to advance their claims.  "As the Supreme Court has consistently emphasized, Article

III of the Constitution limits the jurisdiction of federal courts to Cases and Controversies." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018) (internal quotation marks omitted). "The requirement that a [p]laintiff possess standing to sue emanates from that constitutional provision." *Id.* (internal quotation marks omitted).

To possess standing to sue under Article III, a plaintiff must establish that he "(1) . . . suffered an injury-in-fact that was concrete and particularized and either actual or imminent; (2) there [must have been] a causal connection between the injury and the defendant's conduct (i.e. traceability); and (3) the injury [must have been] likely to be redressable by a favorable judicial decision." *Hutton*, 892 F.3d at 618–19 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan*, 504 U.S. at 560–62. Importantly, standing is not "dispensed in gross," and, accordingly, a plaintiff must demonstrate standing for each claim "he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) Further, "[t]hat a suit may be a class action"—as this one—"adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Chiefly at issue in this case is the injury in fact requirement, the "'first and foremost' of standing's three elements." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is

"concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

Plaintiffs contend they had standing at the commencement of this litigation because they had already incurred damages via "premiums paid on the Policy" and "the diminution of the Policy value." (ECF No. 150 at 23–24.)  Plaintiffs further contend "it is of no consequence [to standing] that the Allen Trust did not pay the Year 21 premium." (*Id.* at 25.)  In other words, Plaintiffs claim that they have standing to pursue their claims because they were allegedly misled into purchasing a product that was less than what they bargained for—that is, Plaintiffs claim they thought they were purchasing a flexible premium universal life insurance policy, but in reality, they had purchased and were paying premiums on nothing more than a term life insurance policy.

Defendants contend that "Plaintiffs lack standing under Article III because they allege to have only paid the minimum amount of premium to keep the policy in-force (as planned), and will never pay anything more in the event (i) the insured dies before September 2023, or (ii) the Allen Trust decides not to keep the policy in force until September 2023, or (iii) the Allen Trust decides not to pay the premium after the end of the Guarantee Period." (ECF No. 115-1 at 30; *see also* ECF Nos. 149 at 7–8; 153 at 15–17.)  And because the Allen Trust has now confirmed its decision not to pay the year 21 premium, Defendants contend Plaintiffs remain without any concrete, particularized and actual injury sufficient to confer standing. (ECF No. 149 at 7–8;  ECF No. 153 at 15–17.)  Throughout their filings, Defendants point to this Court's decision and the Fourth Circuit's affirmance of that decision, though it must

be acknowledged that those decisions dealt with the Allen Trust's injury as it pertained to Rule 23(a)(4)'s adequacy requirement,[7] not Article III standing.

When assessing standing at this stage of the litigation, the Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the Plaintiffs' favor. Guided by this principle, the Court is compelled to conclude that Plaintiffs have alleged an injury-in-fact to assert their tort, contract, and common law fraud claims. That is, relying on the FAC Defendants' representations as to the "features [of the flexible premium universal life policy] that would collectively keep the death benefit on the policies in place for the remainder of the [i]nsured's life," the Allen Trust purchased and continued to pay $484,000 in premiums over a term of 20 years for a $1 million death benefit on the life of an insured who was 76 at the time the policy was issued in 2003.

### B. Preclusive Effect of *Dickman*

While Plaintiffs have met their burden on standing at this stage, they cannot escape the preclusive effect of the release in *Dickman*. In *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29 (1st Cir. 1991), the United States Court of Appeals for the First Circuit explained: "It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either two ways: res judicata or release." *Id.* at 31–32 (citing *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F. Supp. 918, 920–24 (S.D.N.Y. 1989)). "The defenses are separate and distinct." *Id.* at 32 (citing

---

[7] Specifically, the Fourth Circuit found that class counsel met Rule 23(a)(4)'s adequacy requirement, noting any alleged conflict of interest was "entirely speculative," because the Allen Trust's balloon payment would occur in the future, and only if (a) it chooses to keep the policy in effect and (b) the insured survived to age 96. *1988 Tr.*, 28 F.4th at 517–18.

Fed. R. Civ. P. 8(c)).

Initially, this Court notes that the preclusive effect of a federal court judgment is determined by federal common law. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001); *Hately v. Watts*, 917 F.3d 770, 778 (4th Cir. 2019) (applying the holding of *Semtek* to issue preclusion). For judgments in cases where the underlying basis for jurisdiction is diversity, federal law incorporates the rules of preclusion applied by the state in which the rendering court sits. 531 U.S. at 508; 917 F.3d at 778.

Res judicata, or claim preclusion, "generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). As the Fourth Circuit explained in *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156 (4th Cir. 2008),

> [T]he elements of res judicata are: (1) that the parties in the present litigation are the same or in privity with the parties in the earlier dispute; (2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) that there has been a final judgment on the merits.

*Id.* at 162. A judgment approving a class settlement satisfies the "final judgment" criteria of res judicata. *See Abella Owners' Ass'n v. MI Windows & Doors, Inc.*, 860 F.3d 218, 224–25 (4th Cir. 2017). Similarly, the doctrine of collateral estoppel, or issue preclusion—"a subset of the res judicata genre"—bars relitigation of the same issue in a subsequent suit where the proponent demonstrates that: (1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment. *Combs v. Richardson*, 838 F.2d 112, 115 (4th Cir. 1988); RESTATEMENT (SECOND) OF JUDGMENTS § 27 & cmt. h (1982)).

Preliminarily, this Court addresses the FAC Plaintiffs' argument that this Court should not reach the merits of an affirmative defense at the motion to dismiss stage.  (ECF No. 150 at 17.)  While it is true that, generally, a motion to dismiss under Rule 12(b)(6) "cannot reach the merits of an affirmative defense," *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007), in limited circumstances courts may determine the merits of an affirmative defense at this stage of litigation if "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint."  *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).  Given the extensive involvement of the *Allen* FAC Plaintiffs and their counsel in the litigation of the *Dickman* Settlement Agreement and subsequent appeal to the Fourth Circuit, this Court will consider the merits of Defendants' argument on this point.

Turning to the parties' substantive arguments, despite the Allen Trust's arguments to the contrary, each of the requirements for res judicata and collateral estoppel are satisfied in this case, thus this Court's Order approving the class action settlement in *Dickman* precludes the FAC Plaintiffs' claims against the FAC Defendants in the instant case.  FAC Plaintiffs do not dispute that they declined the opportunity to opt out of the *Dickman* class action.  Nor do they dispute that this Court's approval of the *Dickman* settlement agreement constitutes a final judgment on the merits.  Instead, the Allen Trust argues that their action is not based on the "identical factual predicate" as the claims released in the *Dickman* settlement and that their right to litigate their claims in *Allen* should not be stripped from them.

In *Dickman*, a proposed class of life insurance policyholders for Banner's alleged misrepresentations of the performance of their universal life policies and fraudulent increases to COI charges to a class of policyholders.  *Dickman* proceeded under Federal Rule of Civil

Procedure 23's rule allowing opt out class actions, and as part of this process, the FAC

Plaintiffs along with other class members in *Dickman* were sent a notice of the pending

settlement and its terms, including a clear release of:

> any and all claims, . . . arising out of or relating to the implemented or not
> implemented COI Rate Increases or any claims or causes of action that were or
> could have been alleged in the Consolidated Actions Complaints based on the
> same factual predicate, including but not limited to (a) the decision to
> implement or not implement the COI Rate Increases, (b) the design,
> development, implementation and administration of the COI rates in the Class
> Policies; (c) any alleged false, misleading, and/or fraudulent statements or
> omissions made in Policy Statements, Policy communications, marketing
> materials, Corporate Reports, and websites relating to the Class Policies' COI
> charges, account value, and/or Banner's . . . financial condition; (d) the use of
> affiliated reinsurance transactions, special purpose financial captives and
> payment of extraordinary dividends as alleged in the *Dickman* . . . complaint[];
> and (e) any payments made in the past or future as a result of the implemented
> COI Rate Increases.

Settlement Agreement, *Dickman*, No. RDB-16-192 (D. Md. Oct. 3, 2019), ECF No. 250-3

¶ 111 (emphasis added).  The notice also advised class members such as the Allen Trust that

if they did not opt out by a specific date, they would be bound by the settlement terms.

Critically, the FAC Plaintiffs did not opt out.  Rather, the *Allen* FAC Plaintiffs chose to

challenge the *Dickman* settlement agreement in the litigation before this Court.

This Court considered the Allen Trust's objection when it held a final fairness hearing

in February 2020 in *Dickman*.  This Court decided to continue the final fairness hearing and

took the unusual step of granting discovery to determine whether the *Dickman* settlement

contemplated a deficit account harm and whether DAH and COI were one in the same.

During the subsequent discovery, the Allen Trust served interrogatories and deposed a Banner

employee; and Banner served interrogatories on the Allen Trust and deposed a trustee.

Following ruling on objections to certain interrogatories, U.S. Magistrate Judge A. David

Copperthite ordered Plaintiffs to issue an additional interrogatory to Banner to resolve certain objections, but Plaintiffs did not reissue the interrogatory.  In response to the unrevised interrogatory, Banner produced an illustration showing that the year 21 balloon payment consisted of COI charges.  The Court also heard from the Allen Trust's expert witness William Mountain, an insurance specialist who had previously worked with the Allen Trust who testified that the year-21 balloon payment at issue in *Allen* appeared to consist of the unpaid COI charges at the heart of the *Dickman* litigation.

During the continued final fairness hearing in May 2020, this Court overruled the Allen Trust's objection, certified the *Dickman* class for purposes of settlement, and approved the *Dickman* settlement agreement as fair, reasonable, and adequate.  In approving the settlement as "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2), this Court necessarily had to adjudicate the objections the Allen Trust raised, including whether the *Dickman* settlement agreement encompassed the Allen Trust's claims.  That is, this Court considered whether the Allen Trust's "deficit account harm" was different from the harm that the *Dickman* parties considered, and in approving the settlement, this Court determined the Allen Trust's theory was indistinguishable.

The FAC Plaintiffs' challenge to the *Dickman* settlement did not end there.  The *Allen* FAC Plaintiffs appealed to the Fourth Circuit, which also rejected their arguments.  *1988 Tr.*, 28 F.4th at 517–18.  The Fourth Circuit described the distinction between the Allen Trust's theory and that of the *Dickman* plaintiffs as "temporal"—that is, the *Dickman* plaintiffs paid the unlawful COI charges on a rolling basis, and the Allen Trust may have to pay the charges all at once in year 21.  *Id.* at 523.

To be clear, the Fourth Circuit noted that "whether the settlement in [*Dickman*] dooms the Allen Trust's separate action" was not before it. *1988 Tr.*, 28 F.4th at 526 n.8.  However, the Fourth Circuit clearly noted that the Allen Trust was provided an opportunity to prove this, and declined to do so. *Id.*  Specifically, the Fourth Circuit observed that the Allen Trust was provided the opportunity to distinguish the facts giving rise to its claims—the deficit account—from the facts giving rise to the *Dickman* claims—the unlawful COI charges— through a reworded interrogatory, and the Allen Trust, for whatever reason, chose not to press the issue.[8]  *Id.* at 522 n.4.  In short, Plaintiffs are seeking a second opportunity to distinguish their claim from the claims in *Dickman*.  Notably, they declined an opportunity to do so four years ago.

Even if res judicata and collateral estoppel principles were not applicable, this Court would nonetheless find that the FAC Plaintiffs' claims were released.  Releases "are a standard feature of class action settlements." *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015).  "In class action settlements, parties may release not only the very claims raised in their cases, but also claims arising out of the 'identical factual predicate.'"  *Id.* (citing *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011)).  To "engage the gears of the release defense," the release at issue must (1) apply to the plaintiff, (2) encompass the claims asserted, and (3) be legally enforceable.  *Nottingham*, 925 F.2d at 32.  Release differs from res judicata because a class settlement may be drafted broadly to release claims that were not asserted and might not have been asserted in the class action.  Simply stated, the *Dickman* release

---

[8]  The Fourth Circuit noted that the Allen Trust had opportunity to reword an interrogatory to ask for proof that the "the so-called 'deficit account' consisted *only* of COI charges," but they chose not to reword their interrogatory. *1988 Tr.*, 28 F.4th. at 522 n.4.

encompasses the *Allen* FAC Plaintiffs' claims if the Allen Trust's claims arise from an identical factual predicate as the claims asserted by the *Dickman* class.

The basic allegation in this litigation is that the FAC Defendants conspired and schemed to market and sell "a sham" life insurance product, purporting to offer a flexible premium universal life policy that would provide a lifetime death benefit at an affordable cost when, in reality, it was merely a dressed-up term policy with no such benefit, as the massive payment in year 21 would make it irrational, if not impossible for a policy holder to keep a policy in force after the twenty-year guarantee period.  (ECF No. 148.)  In *Dickman*, insurance policyholders sued for Banner's alleged misrepresentations of the performance of their universal life policies and fraudulent increases to COI charges to a class of policyholders. Complaint, *Dickman*, No. RDB-16-192 (D. Md. Jan. 19, 2016), ECF No. 1.  The *Dickman* class representatives alleged that they paid "an excess premium . . . to accrue a higher cash value" in their account.  *Id.* at 6–7.  Faced with liquidity problems, the *Dickman* plaintiffs claimed that "Banner has decided to take that cash from policyholders through a fraudulent COI increase." *Id.* at 50.  Specifically, the *Dickman* plaintiffs asserted that Banner "dramatically" increased their COI charges to prompt policyholders to move more money into their accounts, then "raid[ed the policyholders'] policies' cash values and attempt[ed] to force them to surrender their policies." *Id.* at 8.

In short, the *Dickman* plaintiffs complained of COI charges that they paid on a rolling basis, causing them to surrender their policies, and the *Allen* FAC Plaintiffs complained of a future year 21 balloon payment (consisting of COI charges), which would cause them—and ultimately did cause them—to abandon the same policy.  While FAC Plaintiffs seek to hold

the FAC Defendants liable by positing a different theory of fraudulent conduct, the underlying claim and resulting injury are identical.  As such, the FAC Plaintiffs' claims were extinguished by the *Dickman* settlement.  Accordingly, Defendants' Motions to Dismiss and Supplemental Memorandum (ECF Nos. 114, 115, 116, 149) are GRANTED.  Because the Allen Trust's claims rises and falls on the issue of the preclusive effect of the release in *Dickman*, the Court will now turn to consider Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123).

## II.   Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 133)

### A.  Plaintiffs' Notice of Supplemental Facts Relevant to Motion for Leave to File Second Amended Class Action Complaint (ECF No. 133) Is an Unauthorized Surreply.  Nevertheless, the Court Will Consider Plaintiffs' Notice (ECF No. 133) in Tandem with Plaintiffs' Motion for Leave (ECF No. 123).

Although not chronological, the first issue to be considered is Plaintiffs' Notice of Supplemental Facts Relevant to Motion for Leave to File Second Amended Class Action Complaint (ECF No. 133), which was filed on December 13, 2023.  Therein, Plaintiffs explain:

> Plaintiffs seek to notify this Court about a new factual development that puts this disputed standing issue to rest.  On September 13, 2023 . . . , the Allen Trust received . . . correspondence from Banner indicating that its Policy would terminate if it did not pay a single year premium for year 21 of $2,091,405.29, which is over 86 times the guarantee minimum annual premium of $24,220 it had itself faithfully paid for 20 years.  It is now indisputable that the Allen Trust's allegations were not "nonsense."  And contrary to the Banner's counsel's unequivocal representations to this Court, there was indeed (to once again use Banner's counsel's words) a "secret accumulation" and "[plenty] being hidden here".

(*Id.* at 3–4 (internal citations omitted).)  The FAC Defendants filed responses in opposition (*see* ECF Nos. 137 (filed by Defendants Banner and Legal & General), 140 (filed by Defendant First American), 142 (filed by Defendant Goldstein)), contesting Plaintiffs' Notice as an

improper surreply in support of their Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123).

Surreplies are highly disfavored in this District, *Medish v. Johns Hopkins Health Sys. Corp.*, 272 F. Supp. 3d 719, 722 (D. Md. 2017), and Plaintiffs neglected to move for leave to file their Notice, *see* Local Rule 105.2(a) (D. Md. 2023) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). While the Allen Trust received Banner's correspondence several months after the Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) was fully briefed (*see* ECF Nos. 126, 127, 128, 131), the Court will consider Plaintiffs' Notice (ECF No. 133) in tandem with Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123), though the event is inconsequential to the Court's determination on the futility of the Plaintiffs' proposed Second Amended Class Action Complaint.

## B. Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) is DENIED.

The Court now turns to consider Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123). Through that Motion, Plaintiffs propose to add Plaintiff Demm (ECF No. 123-2 ¶ 18) and Defendant AXA (*id* ¶ 22), as well as an additional claim under NJFCA (*id.* ¶¶ 160–66). Plaintiffs also propose dropping individual Plaintiff Gertrude Allen, Defendant Legal & General, as well as its claims alleging RICO violations (*see* ECF No. 123-3). Lastly, Plaintiffs propose amending their claim for breach of contract and breach of duty of good faith and fair dealing (in the alternative) such that it is only asserted against Banner (ECF No. 123-2 ¶¶ 131–38) and their claim for aiding and abetting such that it is only asserted against First American, Goldstein, and AXA (ECF No. 123-1 at 24–25).

FAC Defendants filed oppositions to the Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF Nos. 126 (filed by Goldstein), 127 (filed by Banner and Legal & General), 128 (filed by First American)), and Plaintiffs replied (ECF No. 131).

Rule 15(a) of the Federal Rules of Civil Procedure provides that, after a response pleading is served, a plaintiff may amend his complaint "by leave of court or by written consent of the adverse party." Leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman*, 371 U.S. at 182. Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Niles Bolton Assocs.*, 602 F.3d at 603. At bottom, this Court finds that granting Plaintiffs leave to amend would result in undue prejudice to the FAC Defendants and that the amendment would be futile. Accordingly, Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) is DENIED on this basis.

### 1. Prejudice

Plaintiffs contend that amendment would not prejudice Defendants, noting the *Allen* parties are at the "earliest stages of litigation" and, in their opinion, the "SAC will simplify the proceeding." (*See* ECF No. 123-1 at 24–25; *see also* ECF No. 131 at 6–13.) The FAC Defendants disagree. Goldstein characterizes the Motion as "unduly delayed and prejudicial," emphasizing that neither Goldstein nor First American are alleged to have had any contract or special relationship with either Demm or AXA. (ECF No. 126-1 at 2–3, 6–7.) Banner and Legal & General contend that the Court should first address the standing arguments as to the

Allen Trust, as the existence of subject matter jurisdiction is a threshold issue.  (ECF No. 127-1 at 8–13.)  Similarly, First American argues that "permitting the [FAC] Plaintiffs to further delay a ruling on the threshold question of this Court's subject[ ]matter jurisdiction would significantly prejudice the Defendants . . . whom will be burdened with the time and expense of further unnecessary litigation."  (ECF No. 128-2 at 10; *see also id.* at 8.)  Like Goldstein, First American highlights that First American and Goldstein have no connection whatsoever to the new parties, but, if this Court permits Plaintiffs to file the SAC, these Defendants would be forced to respond to and defend against Demm's seven causes of action alleged against them.  (*Id.* at 12–13.)

"Prejudice to the opposing party 'will often be determined by the nature of the amendment and its timing.'  Generally, '[t]he further the case progressed before judgment was entered, the more likely it is that [subsequent] amendment will prejudice the defendant.'" *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)).  As the Fourth Circuit explained in *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013), courts look to the "particular circumstances" presented, including previous opportunities to amend and the reason for the amendment.  *Id.* at 118–19 (4th Cir. 2013) (granting leave on a plaintiff's first request for leave where the "proposed amended complaint merely elaborates on an allegation in the original complaint"); *see also Laber*, 438 F.3d at 427–28 (considering both the timing of the amendment and the "alternative theory" for relief it advanced).

Here, the FAC Plaintiffs filed their Original Class Action Complaint in the Northern District of California on August 13, 2019.  (ECF No. 1.)  Shortly after this case was removed

to this Court, (ECF No. 57), this Court stayed the case pending the appeal of a class action settlement approved in *Dickman*. (ECF No. 88.) When the parties notified the Court of the Fourth Circuit's holding on April 7, 2022, (ECF No. 108), the *Allen* Plaintiffs indicated that they were "currently considering whether to file a petition for writ of certiorari to the Supreme Court[.]" (*Id.*) On June 13, 2022, the parties submitted a joint status report indicating that Plaintiffs were not filing a petition for writ of certiorari and "request[ed] that the Court [] lift the stay in this proceeding." (ECF No. 109.) In the same Order lifting the stay of discovery, the Court instructed Plaintiffs to file a First Amended Class Action Complaint, (ECF No. 110), which Plaintiffs did on August 8, 2022. (ECF No. 112.)

Plaintiffs emphasize that the instant Motion is their "*first* request for leave . . . sought from the Court," (ECF No. 131 at 12), and that Demm did not receive his letter until September 2022 and only formally engaged Plaintiffs' counsel on November 11, 2022. (ECF No. 123-1 at 22.) While the Court acknowledges Plaintiffs' predicament, this does not distract from the fact that the Motion was filed more than three years after this litigation commenced, and while a challenge to the FAC Plaintiffs' standing to sue and the

was pending. Simply stated, the procedural history in this case counsels strongly against amendment, as allowing amendment would significantly prejudice the FAC Defendants. Amendment would be especially prejudicial to First American and Goldstein, as they have no connection whatsoever to the proposed additional parties and events that the Plaintiffs seek to add to this suit. Accordingly, Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) is appropriately DENIED on this basis.

**2. Futility**

Even if the amendment would not prejudice Defendants, the Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) would be denied because Plaintiffs' proposed amendments are futile.  In short, the proposed Plaintiff Leo Demm was also a member of the *Dickman* class, and like the Allen Trust, his claim was subsumed by the release in *Dickman*.

## CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss and Supplemental Memorandum (ECF Nos. 114, 115, 116, 149) are GRANTED and Plaintiffs' Motion for Leave to File Second Amended Class Action Complaint (ECF No. 123) is DENIED.

A separate Order follows.

Date: September 30, 2024                                    ___/s/_____

                                                                             Richard D. Bennett
                                                                             United States Senior District Judge